IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACHARY BROWN, | CIVIL DIVISION |
| Plaintiff, | Case No. 2:21-cv-76 |
| v. | |
| US FOODS, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A.   *Preliminary Statement*

1. The plaintiff Zachary Brown brings this action under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.,* to redress violations of his right to be free from employment discrimination based upon his disability. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B.   *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about August 14, 2020 the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2020-02100. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated November 18, 2020.

5. The plaintiff filed this complaint within 90 days of receipt of the Notice of Right to Sue.

C.   ***The parties***

6.   The plaintiff is an adult individual who resides at 21A Clopper Street, Herminie, PA 15210 (Westmoreland County).

7.   The defendant, US Foods is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district.  The defendant maintains a place of business at 1114 Garden Street, Greensburg, PA 15601 (Westmoreland County).

8.   At all times material, the defendant employed more than fifteen employees.

9.   The defendant was the plaintiff's employer and is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5).

D.   **_Factual Background_**

10.   The plaintiff worked for the defendant as a truck driver from April 29, 2019 until July 16, 2020, at which time his employment was terminated.

11.   USF is a food company and a food service distributor.

12.   The plaintiff's duties included: delivering food products to bars, schools, hospitals and restaurants.

13.   The plaintiff has a disability as defined by the Americans with Disabilities Act ("ADA") and/or was perceived by the employer as having a disability.  Specifically, he has congenital hearing loss in both ears, a physical and/or mental impairment that substantially limits one or more of the major life activities of the plaintiff.  The plaintiff is required to wear hearing aides; without them, he is functionally deaf.

14.   The plaintiff told management (and his co-workers) about his disability at the outset of his employment.

15. Throughout his employment, the plaintiff was able to do all of the essential functions of his job with minimal accommodations. Specifically, the company called him at night with his scheduling information for the next day instead of requiring him to call and listen to a voicemail. He could not hear the voicemail instructions, which is why he needed an accommodation. The company begrudgingly provided this accommodation, not before writing the plaintiff up several times for failure to get and understand the voicemail instructions.

16. Starting in approximately August 2019, Doug Hice, Safety Manager, became one of the plaintiff's supervisors. Hice seemed to have an issue with the plaintiff's disability and made remarks, jokes and comments about the plaintiff's hearing loss. At first, the plaintiff shrugged it off, but Hice continued and escalated his harassing conduct.

17. On repeated occasions, Hice would say something to one of the plaintiff's co-workers and they would laugh, looking in the plaintiff's direction. He also said things to co-workers (in the presence of the plaintiff) like, "go ahead and say what you want, he can't hear you anyway."

18. Hice made remarks directly to the plaintiff; making fun of his disability and about his "inability to hear". Hice also called the plaintiff names, such as "deaf boy".

19. Management, including Hice, subjected the plaintiff to heightened scrutiny in the performance of his work and wrote him up for various infractions. Similarly situated drivers without disabilities were not subjected to the same discipline.

20. In approximately late-June or early-July 2020, the plaintiff called Human Resources about the discriminatory treatment to which he was being subjected – including the heightened scrutiny of his performance. The Human Resources representative did not care about

his complaints of discrimination and instead just talked about the company's "driver safety program".

21. On July 10, 2020, one of the plaintiff's hearing aides broke. The plaintiff got a "loaner" hearing aide until his could be repaired, but it did not work as well and the plaintiff had difficulty hearing. He told Hice about the problem and said that he should not be driving since his hearing was impaired, but Hice told him to continue working; "you'll be fine," he said.

22. On or about July 16, 2020, John [last name unknown], one of the company's managers called the plaintiff on his cell phone while he was on the road. John told the plaintiff to return to the yard to pick up a pallet that he had forgotten to load. The company "policy" is that drivers are not permitted to take any cell phone calls while they are driving; however, the managers expected and required the drivers to take their calls notwithstanding the company's stated policies. The drivers do not get written up for taking a manager's call, but could be subject to discipline if they ignored it or refused to pick up the call.

23. On July 17, 2020, the plaintiff received a call from a manager who informed him that his employment was being terminated because of a "driver camera violation" reported on July 16. Specifically, Hice – who monitors driver cameras – reported that the plaintiff was seen talking on his cell phone in violation of company policy. The plaintiff told the supervisor that the only person he talked to was John, but this did not matter and the company did not change its decision.

24. The reason given for his termination was nothing more than a pretext and the real reason that he was terminated was because of his disability.

## FIRST CAUSE OF ACTION

25. The plaintiff has a disability and thus is protected against discrimination under the ADA.

26. The plaintiff was qualified for his position.

27. The plaintiff was able to perform his position with or without a reasonable accommodation.

28. Despite his qualifications, the plaintiff was terminated. The reasons given for discharge were a pretext.

29. At all ties relevant, the defendant knew of the plaintiff's disability and/or regarded the plaintiff to be a disabled individual.

30. The defendant's violation of the ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination.

## SECOND CAUSE OF ACTION

31. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

32. The defendant terminated the plaintiff's employment and otherwise discriminated against him in the terms and conditions of his employment because of his disability, in violation of the PHRA, 43 Pa. C.S. § 951 *et seq*.

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under the ADA and the PHRA, including back pay, front pay, compensatory damages, punitive damages and attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. I.D. No. 63306
2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676
Counsel for the plaintiff

Dated:  January 18, 2021